**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-02115-NYW-TPO

PAUL CHANCELLOR, and
NATALIE MAKARA,

     Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Fed. R. Evid. 702 Motion to Limit the Opinions of Plaintiffs' Expert Aaron Castillo (the "Motion to Exclude"), [Doc. 63], and Defendant's Motion for Summary Judgment, [Doc. 64]. The Court has reviewed the Motions and concludes that oral argument would not materially assist in their resolution. For the reasons set forth below, the Motion to Exclude is **GRANTED in part** and **DENIED in part** and the Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

At all relevant times, Plaintiffs Paul Chancellor and Natalie Makara (together, "Plaintiffs") were insured through Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"). [Doc. 6 at ¶¶ 3–4]. In 2023, their vehicle was damaged in a collision, and Plaintiffs took the car to Nylund's Collision Center ("Nylund's") for repairs. [*Id.* at ¶¶ 3, 5]. State Farm only reimbursed Plaintiffs for a portion of the amount charged by Nylund's. [Doc. 64 at ¶¶ 16, 21; Doc. 66 at ¶¶ 16, 21]. Plaintiffs

subsequently sued State Farm, asserting one breach of contract claim, one claim of unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116, and one claim of common law bad faith. [Doc. 6 at 3–4].

In its Motion for Summary Judgment, State Farm asks the Court to enter summary judgment in its favor on each of Plaintiffs' claims. [Doc. 64]. State Farm also moves to exclude the testimony of Plaintiffs' insurance industry expert, Aaron Castillo. [Doc. 63]. The Motions are fully briefed and ripe for resolution.

## I.    The Motion to Exclude

### A.    Legal Standard

Rule 702 of the Federal Rules of Evidence states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'" *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). The proponent of expert testimony has the burden to show its admissibility by a preponderance of the evidence. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

2

Trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, the trial court first analyzes whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions. Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019). If the expert is qualified, the court must determine whether the expert's opinions are reliable by assessing the underlying reasoning and methodology. *Bill Barrett Corp.*, 918 F.3d at 770. The court must also determine whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003). This inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue." *Sanderson*, 976 F.3d at 1172 (cleaned up).

## B.    Analysis

Plaintiffs designated Mr. Castillo to testify about "State Farm's errors in the estimating and supplemental estimating processes, State Farm's use of improper use of, and disregarding of, manufacturer and industry common repair standards, [and] State Farm's bad faith and unfair claims practice issues." [Doc. 63-2 at 4]. Defendant moves to exclude "the opinions and conclusions contained in Mr. Castillo's expert report." [Doc. 63 at 2].[1]

---

[1] In its Motion to Exclude, State Farm refers to the Practice Standards of Judge Philip A. Brimmer. [Doc. 63 at 1]. Judge Brimmer is not, nor has he ever been, the presiding judge on this action. This Court's Civil Practice Standards state that all motions under Rule 702 "shall . . . specify, with particularity, the opinion(s) that the moving party seeks to exclude and the specific ground(s) on which each opinion is challenged, e.g., relevancy,

### 1.    Qualifications

State Farm's first argument is that Mr. Castillo "does not demonstrate the requisite familiarity with the standards of the industry to qualify as an 'insurance industry standard expert.'" [*Id.* at 4 (emphasis omitted)].   While framed as an attack on Mr. Castillo's qualifications, State Farm does not contend that Mr. Castillo is unqualified based on his "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Rather, State Farm relies on Mr. Castillo's deposition testimony *from a different case* to argue that Mr. Castillo lacks familiarity with insurance industry standards.  [Doc. 63 at 4].

State Farm cites no legal authority demonstrating that the Court may properly consider Mr. Castillo's deposition testimony from a different case in assessing his qualifications here.  *See* [*id.*].  In any event, the Court is not persuaded that Mr. Castillo's extraneous deposition testimony provides a basis for exclusion.  State Farm's argument asks the Court to reflexively adopt State Farm's subjective belief that Mr. Castillo's knowledge of industry standards is inadequate—and fails to meet some unknown standard set by State Farm itself—without any objective or legal basis to support its position.  For example, State Farm suggests that Mr. Castillo is unqualified because he could not describe, in his deposition in another case, "what constitutes a valid and complete claim file according to the Colorado Division of Insurance." [Doc. 63-4 at 38:20–23; Doc. 63 at 4].   Accepting State Farm's argument that this renders Mr. Castillo unqualified requires the Court to accept that an insurance industry expert *must* be able to articulate the Colorado Division of Insurance's specific definition of "valid and complete

---

sufficiency, or methodology."   NYW Civ. Practice Standard § 7.1C(b).   The Court's analysis is thus limited to the specific opinions challenged in the Motion and the specific grounds for exclusion asserted by Defendant.

claim file." But just as an "expert's opinions are not admissible merely because the expert says, in effect, 'trust me, I know,'" *Mooring Cap. Fund, LLC v. Phoenix Cent., Inc.*, No. 06-cv-00006-HE, 2009 WL 4263359, at *5 (W.D. Okla. Feb. 12, 2009), *aff'd*, 388 F. App'x 814 (10th Cir. 2010), a party cannot obtain the exclusion of expert testimony by simply insisting that the expert does not know what he should know—particularly when it is unclear how this purported lack of knowledge relates to the circumstances presented *in this instant action*.

State Farm also insists that the contents of Mr. Castillo's rebuttal report "highlight his lack of knowledge about the applicable insurance industry standards." [Doc. 63 at 5–6]. But this attack on Mr. Castillo's qualifications goes to the testimony's weight, not its admissibility. *See Northmarq Fin., LLC v. Fid. Nat'l Title Ins. Co.*, No. 22-cv-02839-WJM-TPO, 2025 WL 2780917, at *8 (D. Colo. Sept. 30, 2025) (concluding that if expert "lack[ed] sufficient knowledge to explain" certain aspects of his opinions, "such deficiencies go to the weight to be afforded his opinions rather than their admissibility"). Similarly, State Farm's reliance on its own expert's report to challenge the correctness of Mr. Castillo's opinions, *see, e.g.*, [Doc. 63 at 12–13], is not a proper basis to exclude an opinion under Rule 702, s*ee Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1005 (D. Colo. 2020) ("Competing expert opinions present the classic battle of the experts and it is up to a jury to evaluate what weight and credibility each expert opinion deserves." (cleaned up)). The Court will not exclude Mr. Castillo's testimony on these bases.

Alternatively, State Farm attacks specific opinions asserted by Mr. Castillo. It contends that certain opinions should be excluded because (1) some are legal

5

conclusions couched as expert opinions, [Doc. 63 at 7–8]; and (2) others fail to meet the reliability and methodology standards of Rule 702, [*id.* at 8–14].

### 2.       Impermissible Legal Conclusions

Although an expert may "refer to the law in expressing their opinion," *United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) (cleaned up), it is well-settled that an expert may not "state legal conclusions drawn by applying the law to the facts," *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991). For instance, an expert may not opine that an insurance company violated the law or its legal duties, *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 930 (D. Colo. 2017), or that an insurance company acted in bad faith or acted unreasonably, *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4317112, at *10 (D. Colo. Sept. 23, 2021). An expert may, however, "'articulate what he believes were the relevant industry standards applicable'" to the plaintiff's claim and "may opine whether he believes [the insurer] departed from those standards." *George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *13 (D. Colo. Jan. 2, 2020) (quoting *O'Sullivan*, 233 F. Supp. 3d at 929).

Defendants challenge a number of Mr. Castillo's opinions as legal conclusions that are improper under Rule 702. [Doc. 63 at 7–8, 11–14]. In their Response, "Plaintiffs concede that Mr. Castillo's opinions that explicitly conclude State Farm's conduct violated the law [are] likely impermissible, but not all of his opinions contain such conclusions." [Doc. 67 at 9 (emphasis omitted)]. They argue that "the appropriate remedy for this Court is to provide limiting instructions to prohibit express references to statutory violations, not to exclude any references to a legal statute or regulation." [*Id.*].

6

Although an expert witness may reference the law in offering their opinions, *Schneider*, 704 F.3d at 1294, the Court finds that the following opinions, as framed in Mr. Castillo's reports, are impermissible legal conclusions that must be excluded:

- "If [State Farm sent a letter about the potential lack of coverage for repairs only to Nylund's customers, and not to all customers], this would be an unfair claims practice and borderline defamation."  [Doc. 63-1 at 5].

- "Failure to invoke the appraisal clause and charge the customer directly is in breach of the insuring agreement per the auto policy contract.  It would also be a violation of C.R.S 10-4-120(3)(f) failing [sic] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies." [*Id.* at 6].

- "I believe State Farm acted in bad faith and violated C.S.R 10-4-120(3)(c) pay [sic] for repair services and products based on a prevailing competitive price, as established by competitive bids, generally accepted insurer-based methodology, or market surveys that determine a fair and reasonable market price for similar services."  [*Id.*].

- "State Farm also failed to pay all reasonable costs sufficient to pay for the beneficiary's or claimant's repairs including materials or parts C.R.S 10-4-120(3)(e) [sic]."  [*Id.* at 6].

- "State Farm had a duty to notify the customer and review any and all items not approved. . . .  Not doing so is in violation of C.R.S 10-3-1104(1)(h)(XIV) failing [sic] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."  [*Id.* at 7].

- "In my professional opinion, State Farm failed to act in good faith by sending out a letter that Nylund's Collision Center may charge more than State Farm will approve before they even inspected the vehicle.  This . . . is a steering technique engaging [sic] in unfair claims practice."  [*Id.*].

- "Failure to invoke the appraisal clause and charging the customer the difference is acting in bad faith.  By not following the appraisal clause process outlined in the insuring agreement, it is my professional opinion that State Farm acted in bad faith and is engaging in unfair claims practices."  [*Id.*].

- "In my opinion this [letter] is a . . . also clear violation of Title 10."  [Doc. 63-5 at 7].

- "By definition of the statute this would be nonpayment of a claim."  [*Id.*].

7

- "A blanket letter targeting a shop that it [sic] may charge more than what State Farm deems adequate is in direct violation and willfully disregarding the steering regulation set forth by the state of Colorado."  [*Id.*].

- "State Farm acted in bad faith with regards to denying repair procedure costs in line with the collision repair industry standards 10-4-120(3)(e)."  [*Id.* at 9].

- "[State Farm] also engaged in unfair claims practice by recklessly disregarding Amended regulation 5-1-14. . . .  State Farm acted in bad faith when they failed to follow C.R.S 10-3-1104(1)(h)(XIV)."  [*Id.*].

All of these opinions are framed as legal conclusions and are therefore impermissible.

The cure, contrary to Plaintiffs' suggestion, is not a limiting instruction but exclusion.  Mr. Castillo will not be permitted to opine that State Farm acted unreasonably, acted in bad faith, failed to act in good faith, or violated any Colorado statute.  *A.E.*, 936 F.2d at 476. Nor will Mr. Castillo be able to state that State Farm owed any sort of legal duty to Plaintiffs.  *See Baumann v. Am. Fam. Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011) (An opinion that an insurer owed a legal duty "usurp[s] the function of the trial judge to instruct the jury on the law.").  However, to the extent these opinions are intertwined with, or may be re-framed as, opinions about whether State Farm's conduct complied with articulable insurance industry standards, Mr. Castillo may present such opinions so long as they are properly framed.  *See, e.g.*, *George*, 2020 WL 70424, at *9, *13 (permitting expert testify that insurer's conduct "did not conform with" or "departed from" insurance industry standards); *Canyon Club Condo. Owners Ass'n v. Am. Fam. Mut. Ins. Co.*, No. 18-cv-00683-DDD-STV, 2023 WL 10410009, at *4 (D. Colo. Sept. 29, 2023) (concluding that expert's opinions about whether insurer complied with industry standards "may assist the jury in its determination of whether or not the insurance claim was investigated reasonably").

### 3.    Other Bad Faith Opinions

State Farm also attacks some of Mr. Castillo's bad faith opinions on other grounds, such as reliability and methodology.  [Doc. 63 at 10–14].

**Steering Opinions.**    First, State Farm attacks Mr. Castillo's "steering" opinions, see [*id.* at 10], which relate to a letter State Farm sent to Plaintiffs stating that "Nylund's Collision Center may not agree with [State Farm's repair] estimate and any supplements to it.  You may be personally responsible for the differences," [Doc. 64-8 at 2].  Mr. Castillo opines that this letter was intended to steer the customer away from using Nylund's:

- "This letter sent to the insured appears to have the very specific intention of steering the customer away from using Nylund's Collision Center for repairs. . . . This letter seems to indirectly intimidate the insured[.]"  [Doc. 63-1 at 5].

- "[The letter] clearly has the intention of swaying the customer from utilizing their shop of choice."  [Doc. 63-5 at 7].

State Farm moves to exclude these opinions because they improperly opine about State Farm's state of mind.  [Doc. 63 at 11].  Plaintiffs concede that Mr. Castillo "may not testify to State Farm's purported intent."  [Doc. 67 at 13].  The Court agrees with the Parties that Mr. Castillo may not speculate or opine about State Farm's intent, *see Northmarq Fin., LLC*, 2025 WL 2780917, at *6, and any such opinions will be excluded, *see Pacheco v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00305-NYW-SBP, 2024 WL 3834166, at *7 (D. Colo. Aug. 15, 2024) (excluding opinion that insurer's conduct "seem[ed] intentionally designed to create the foundation for a value dispute").  However, Mr. Castillo may "testify about facts and his observations from which the jury can then infer motive or intent."  *Northmarq Fin., LLC*, 2025 WL 2780917, at *6 (quotation omitted).

State Farm also moves to exclude Mr. Castillo's opinions that "State Farm failed to act in good faith" by sending the letter and that the letter constituted "a steering

technique engaging in unfair claims practice." [Doc. 63 at 11 (quoting Doc. 63-1 at 7)].[2] State Farm argues that these opinions should be excluded because although Mr. Castillo "alleges violation of an insurance industry standard," he "fails to describe and apply that standard." [Doc. 63 at 11]. The Court respectfully disagrees with this argument. In conjunction with his opinion, Mr. Castillo quotes Colo. Rev. Stat. § 10-4-120(2), [Doc. 63-1 at 7], which states that a property insurer "shall not . . . [d]irectly or indirectly require that appraisals or repairs to the property be made or not be made by a specified repair business," Colo. Rev. Stat. § 10-4-120(2)(a). Courts in this District recognize that some insurance industry standards "are expressly stated in statute." *Gribowski v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-03115-MEH, 2022 WL 16855688, at *4 (D. Colo. Nov. 10, 2022); *see also Martin-Harker v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00629-PAB-STV, 2025 WL 914297, at *2 (D. Colo. Mar. 26, 2025) ("An expert may testify as to insurance industry standards codified in Colorado statute and ones that are 'generally accepted' within the Colorado insurance industry."). Though Mr. Castillo's report is not a model of clarity, the Court finds that it can be readily understood that Mr. Castillo believes that State Farm, in sending the letter, violated an industry standard prohibiting an insurer from requiring insureds to use or not use specific repair shops. The Court will not exclude this opinion, so long as it is framed in the context of industry standards and does not touch on State Farm's compliance with the law or reasonableness.

---

[2] As explained above, Mr. Castillo may not opine that State Farm "failed to act in good faith" or "engag[ed] in unfair claims practice," but he may opine that State Farm failed to comply with industry standards. *George*, 2020 WL 70424, at *9, *13. Accordingly, the Court addresses Defendant's additional arguments for exclusion in the event Mr. Castillo attempts to frame his opinions in this way.

***Appraisal Clause.***  State Farm next moves to exclude Mr. Castillo's opinions that State Farm's "[f]ailure to invoke the appraisal clause and charge the customer directly is in breach of the insuring agreement per the auto policy contract," is "a violation of C.R.S. 10-4-120(3)(f)," and "is acting in bad faith."  [Doc. 63 at 12 (quoting Doc. 63-1 at 6–7)]. The Court has already excluded these opinions as impermissible legal conclusions to the extent Mr. Castillo opines that State Farm violated any law, breached the policy, or acted in bad faith; this ruling does not apply to any opinion properly framed as an opinion that State Farm failed to comply with industry standards.

State Farm argues that these opinions should be excluded because "there is no industry standard that stands for the proposition that the insurer acts in bad faith when it does not invoke the appraisal clause," relying on its own expert's report and Mr. Castillo's extraneous deposition testimony in support.  [Doc. 63 at 12–13].  However, these arguments go to the correctness or weight of Mr. Castillo's opinions and do not demonstrate that exclusion under Rule 702 is appropriate.  *Thompson*, 457 F. Supp. 3d at 1005; *Squires*, 829 F. Supp. 2d at 1055.  To the extent State Farm disagrees with this opinion, it may explore this disagreement during cross-examination.

***State Farm's Explanation of Denial and Duty to Notify.***  Mr. Castillo opines that State Farm "failed to clearly explain what was denied in the repair estimate or why it was denied" and that "[s]imply stating it was clear in the estimate is not sufficient to explain the differences to the insured who is a layperson . . . and would not know how to properly read the repair estimate."  [Doc. 63-5 at 9–10].  State Farm moves to exclude this opinion on several grounds:  (1) it is an impermissible legal conclusion; (2) Mr. Castillo "fails to state what the insurance industry standard is and how exactly this conduct by State Farm

deviated from that industry standard"; (3) the opinion is inconsistent with State Farm's expert's opinions; and (4) because "Plaintiff Chancellor testified that he has 30 years of experience as a mechanic," Mr. Castillo's statement that Mr. Chancellor is a layperson "is not grounded in fact." [*Id.* at 13–14].

The Court is respectfully unpersuaded by Defendant's first, third, and fourth arguments. The challenged opinion does not constitute a legal conclusion; that Mr. Castillo's testimony is inconsistent with Defendant's expert's opinion is not a basis for exclusion; and any argument about whether or not Mr. Chancellor is properly deemed a "layperson" goes to the weight of Mr. Castillo's testimony, not its admissibility.

As for Defendant's second argument—that Mr. Castillo's opinion lacks reliability because he does not explain why State Farm's conduct deviated from industry standards—the Court respectfully agrees. To be sure, although Mr. Castillo does not expressly identify the industry standard in the clearest terms, he provides enough information to identify the applicable insurance industry at issue: Mr. Castillo references Colorado's Unfair Claims Practices Act, which describes an insurer's "[f]ail[ure] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim" as an unfair claims practice. [Doc. 63-5 at 9]; Colo. Rev. Stat. § 10-3-1104(1)(h)(XIV). And the Unfair Claims Practices Act provides "valid," albeit inconclusive, "evidence of [insurance] industry standards." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1209 (D. Colo. 2022) (quoting *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004)). In this instance, Mr. Castillo has identified an insurance industry standard—that an insurance company must promptly and reasonably explain the basis of its denial of a claim.

State Farm also asserts, however, that Mr. Castillo "fails to state . . . how exactly . . . State Farm deviated from th[is] industry standard." [Doc. 63 at 13]. Plaintiffs do not directly respond to this argument. *See* [Doc. 67 at 15]. At best, Plaintiffs assert that "Mr. Castillo explains State Farm's conduct did not satisfy this insurance industry requirement," directing the Court to two sentences in Mr. Castillo's report: "State Farm had a duty to notify the customer and review [any and] all items not approved. . . . Not doing so is in violation of C.R.S. 10-3-1104(1)(h)(XIV)." *See* [*id.* (quoting Doc. 63-1 at 7)]. But contrary to Plaintiffs' assertion, these statements do not explain with sufficient particularity how State Farm's notice of denial failed to comply with insurance industry standards. Mr. Castillo does not, for example, discuss what *would* constitute a prompt and reasonable explanation of a claim denial or identify any specific deficiencies in State Farm's notice. In fact, Mr. Castillo does not engage in a meaningful analysis of State Farm's notice of denial at all.

Moreover, an expert witness who relies primarily on his or her experience in forming an opinion[3] "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th

---

[3] Mr. Castillo states that his opinions are "based on a thorough review of the State Farm Car Policy Booklet," the insurance policy, State Farm's notice of denial, Colorado statutes, and "[his] extensive expertise and experience in the insurance industry." [Doc. 63-1 at 8]; *see also* [*id.* at 1–2 ("Given my extensive experience in the field of insurance, I firmly believe that my qualifications render me well-suited to provide professional insight on the issue at hand. Through years of dedicated study, practical application, and continuous learning, I have developed a deep understanding of the complexities surrounding this case. My background equips me with the necessary knowledge, skills and critical thinking abilities to offer valuable perspectives on this issue.")].

Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

Mr. Castillo does not do so here.

"[C]onclusory opinions, which require blind acceptance of the expert's *ipse dixit*,

are never helpful." *Huang v. Marklyn Grp. Inc.*, No. 11-cv-01765-REB-BNB, 2014 WL

3559367, at *5 (D. Colo. July 18, 2014).   Plaintiffs have not demonstrated that Mr.

Castillo's opinion is reliable, and for this reason, this opinion will be excluded.   *See*

*Nosewicz v. Janosko*, No. 16-cv-00447-PAB-KLM, 2019 WL 1442988, at *4 (D. Colo.

Mar. 31, 2019) (excluding opinion that was "nothing more than an assertion without

explanation").

### 4.    Prevailing Competitive Pricing

Next, State Farm moves to exclude a number of opinions related to State Farm's

"denial of the full repair amount."  [Doc. 63 at 8].

Relevant here, the insurance policy states that State Farm's repair estimate may

be based on "[t]he prevailing competitive price," which is defined as "prices charged by a

majority of the repair market in the area."  [Doc. 64-2 at 26].  Mr. Castillo opines that "the

repairs that were denied by State Farm are fair and reasonable and in line with the

prevailing competitive price for the market."  [Doc. 63-1 at 6].  Elsewhere in his report, he

asserts that "most insurance companies . . . pay the prevailing rate of $62 for body labor,

$62 for paint labor[,] and $48 for paint supplies in the local market."  [*Id.* at 3].  He states

that he is "not sure where State Farm is getting their prevailing competitive price from as

it was not presented" to him.  [*Id.*].

State Farm argues that Mr. Castillo's opinion should be excluded because

"although Mr. Castillo purports to know the prevailing competitive price for the market, he

14

explicitly observes that he did not have the data in order to accurately opine on the prevailing competitive price," such that his opinion is not based on accurate facts and data. [Doc. 63 at 8–9]. Plaintiffs respond by relying on (1) Mr. Castillo's deposition testimony from another case, in which he stated "that he and other insurance companies [sic] use LaborRateHero to survey competitive labor prices," [Doc. 67 at 10 (citing Doc. 63-9 at 55:13–56:1)]; and (2) Defendant's expert's testimony that Nylund's rate of $62 per hour is "consistent with applicable body shop industry standards," [*id.* (citing Doc. 66-4 at ¶ 16)].

The problem with Plaintiffs' argument is that it relies on information not contained in Mr. Castillo's report—for example, there is no indication that Mr. Castillo used LaborRateHero to form his opinions in this case, let alone any explanation or information demonstrating that LaborRateHero provides a reliable basis for his opinion. With that said, the Court is not persuaded that exclusion of this opinion is warranted on the basis asserted by Defendant.[4] "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination." *Squires*, 829 F. Supp.

---

[4] State Farm does not argue that exclusion is proper based on a violation of the disclosure requirements under Rule 26 of the Federal Rules of Civil Procedure, Rule 37, or the factors set forth by the Tenth Circuit in *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999). *See generally* [Doc. 63]. The Court respectfully declines to speculate about, or craft, any argument that might justify exclusion on another basis, particularly given that Defendant has been represented by able counsel since the inception of this case, *see United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."), and simply notes that any such argument is untimely at this juncture, given that discovery closed on July 2, 2025, *cf. Grays v. Blackhawk Acquisition, LLC*, No. 20-cv-00451-SKC, 2024 WL 3179541, at *3 (D. Colo. June 26, 2024) (observing that the timeliness of the Rule 37 motions is generally measured from the close of discovery); [Doc. 56].

2d at 1056 (quoting *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)). "Only

if the expert's opinion is so fundamentally unsupported that it can offer no assistance to

the jury must such testimony be excluded." *Id.* (quoting *Bonner*, 259 F.3d at 929–30).

The Court concludes that State Farm's challenge goes to the weight of Mr. Castillo's

opinion, not its admissibility. To the extent State Farm asserts that Mr. Castillo's opinions

were formed without considering all relevant facts or data, they can press this point on

cross-examination. *See Squires*, 829 F. Supp. 2d at 1056; *Bloomer v. HMG Park Manor

of Westwood, LLC*, No. 24-cv-02059-JAR, 2025 WL 2444146, at *4 (D. Kan. Aug. 25,

2025).

### 5. Repair and Finish

State Farm next seeks to exclude Mr. Castillo's "opinions about the repair

processes." [Doc. 63 at 9]. Specifically, it challenges the following opinions related to the

repair and finish of Plaintiffs' vehicle:

- "Per the paint manufacturer and common industry practice the clear coat must continue until there is a proper break in the panel." [Doc. 63-1 at 3].

- "A proper refinish per the paint manufacturer guidelines would be to continue the blend until there is a clear break to stop the clear coat." [*Id.* at 3–4].

- "Per the proper manufacturer repair procedure and industry standards it was sectioned in at the sail panel and the dog leg." [Doc. 63-5 at 3].

- "When replacing the quarter panel, there is no break between the uniside panel and the quarter panel and thus per the collision industry standard laid out by both the paint manufacturer PPG and the Toyota vehicle manufacturer the clear coat must extend until there is a break in the panel." [*Id.*].

*See* [Doc. 63 at 9]. For additional context, the Court notes that Mr. Castillo states in his

report that "[a] large portion of the repair estimate that was denied deals specifically with

16

the repair and refinish of the pinch welds due to the setup and measure of the unibody structure." [Doc. 63-1 at 3].

State Farm moves to exclude these opinions as unreliable because they "confuse the relevant industry standards and are plainly contrary to the law," as "Title 10 [of the Colorado Revised Statutes] does not require an insurer to follow manufacturer repair procedures and position statements." [Doc. 63 at 9]. The Court is respectfully unpersuaded by this argument. Mr. Castillo does not appear to opine that insurance industry standards require an insurance company to "follow manufacturer repair procedures and position statements," as Defendant suggests. In his rebuttal report, Mr. Castillo clarifies that "[t]he insurance industry does not dictate the standards for collision repair. It is the collision repair industry that dictates the collision repair standards." [Doc. 63-5 at 5 (emphasis omitted)]. The Court therefore construes Mr. Castillo's report as discussing collision repair industry standards, not insurance industry standards. Moreover, State Farm's argument simply challenges the correctness of Mr. Castillo's opinion, which is not a proper basis to exclude under Rule 702. *See Squires*, 829 F. Supp. 2d at 1055. The Court will not exclude these opinions.

### 6.    Miscellaneous Charges

Mr. Castillo states that "State Farm failed to pay for miscellaneous charges presented by Nylund's Collision Center" and opines that "most shops do not charge for these repairs or materials." [Doc. 63-1 at 4]. State Farm argues that this opinion is "not supported by the facts of the case (i.e., the policy language) nor the insurance industry standard." [Doc. 63 at 10]. In support of this argument, State Farm relies on (1) its own expert's report that State Farm's actions with respect to miscellaneous charges "were

consistent with the language of the policy," and (2) Mr. Castillo's deposition testimony from another case wherein he stated that insurance companies "don't typically" pay for these charges.  [*Id.* (citing Doc. 63-9 at 86:1–10; Doc. 63-10 at 10)].

As explained above, exclusion is not appropriate simply because a competing expert disagrees with the challenged expert's conclusions.  *Thompson*, 457 F. Supp. 3d at 1005.  State Farm's challenge goes to the weight of this opinion, not its admissibility, and exclusion is not a proper remedy.  *Squires*, 829 F. Supp. 2d at 1056; *Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2021 WL 1037863, at *3 (D. Colo. Jan. 29, 2021) ("Assuming . . . [the expert's] deposition testimony does in fact contradict the opinion expressed in his expert report, that is a matter which goes to the weight, not the admissibility, of his opinion and can be explored on cross-examination.").

For all of these reasons, the Motion to Exclude is **GRANTED in part** and **DENIED in part**, as set forth in the above analysis.

## II.      The Motion for Summary Judgment

### A.      Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party,

is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## B.    Undisputed Material Facts

The following undisputed material facts are drawn from the summary judgment record.

1.    Plaintiffs' vehicle was damaged in a motor vehicle collision on January 3, 2023. [Doc. 64 at ¶ 10; Doc. 66 at ¶ 10; Doc. 6 at ¶¶ 3–5].

2.    At the time of the loss, Plaintiffs had comprehensive insurance coverage through State Farm. [Doc. 64 at ¶ 1; Doc. 66 at ¶ 1; Doc. 64-1]

3.    Plaintiffs elected to have their vehicle repaired at Nylund's Collision Center. [Doc. 64 at ¶ 13; Doc. 66 at ¶ 13; Doc. 64-7 at 19:12–15].

4.    Nylund's exclusively uses Original Equipment Manufacturer ("OEM") "parts and procedures."  [Doc. 64 at ¶ 4; Doc. 66 at ¶ 4; Doc. 65-1 at 77:13–18].

5.    At the time of the collision, every part of Plaintiffs' vehicle was an OEM part. [Doc. 66 at ¶ 30; Doc. 74 at ¶ 30; Doc. 65-1 at 163:20–24].

6.    The vehicle repairs were completed on May 23, 2023, and Nylund's charged approximately $21,173.84 for the repairs.  [Doc. 64 at ¶¶ 13, 16, 17; Doc. 66 at ¶¶ 13, 16, 17; Doc. 64-7 at 32:6–9].[5]

7.    State Farm paid Plaintiffs a total of $13,793.41, made in four installments, to reimburse the repair costs.  [Doc. 64 at ¶¶ 18, 21; Doc. 66 at ¶¶ 18, 21; Doc. 64-6 at 1].

8.    State Farm's repair estimate accounted for use of aftermarket parts.  [Doc. 66 at ¶ 31; Doc. 74 at ¶ 31; Doc. 65-1 at 122:15–18].

9.    The insurance policy states:

1. We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:

a. Pay the cost to repair the covered vehicle minus any applicable deductible.

(1) We have the right to choose one of the following to determine the cost to repair the covered vehicle:

(a) The cost agreed to by both the owner of the covered vehicle and us;

(b) A bid or repair estimate approved by us; or

(c) A repair estimate that is written based upon or adjusted to:

(i)  the prevailing competitive price;

(ii)  the lower of paintless dent repair pricing established by an agreement we have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

---

[5] The Motion for Summary Judgment lists the amount charged as both $21,173.84 and $21,173.85.  [Doc. 64 at ¶¶ 16, 18; id. at 6].  The specific amount charged is not material to the Court's resolution of the Motion.

> The prevailing competitive price means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by us.  If asked, we will identify some facilities that will perform the repairs at the prevailing competitive price.  The estimate will include parts sufficient to restore the covered vehicle to its pre-loss condition.

[Doc. 64 at ¶ 2; Doc. 66 at ¶ 3; Doc. 64-2 at 26 (emphasis omitted)].[6]

10.     The policy also states:  "You agree with us that the repair estimate may include new, used, recycled, and reconditioned parts.  Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts." [Doc. 64 at ¶ 3; Doc. 66 at ¶ 3; Doc. 64-2 at 26].

11.     State Farm takes the position that it paid a sufficient amount to put Plaintiffs' vehicle as close to pre-loss condition as possible.  [Doc. 64 at ¶ 15; Doc. 66 at ¶ 15; Doc. 64-9 at 32:10–14].

12.     In addition to the cost of repairs, Plaintiffs claim that Defendant owes them $1,961.28 for "car payments" and $447.15 for insurance payments Plaintiffs made when their vehicle was unusable, plus $1,920 in taxes and interest related to a loan Plaintiffs took out to pay for the repairs.  [Doc. 64 at ¶ 19; Doc. 66 at ¶ 19; Doc. 64-11 at 3].

**C.     Analysis**

State Farm argues that it is entitled to summary judgment on each of Plaintiffs' three claims.  *See* [Doc. 64].  The Court addresses each claim, and the Parties' competing arguments, in turn.

---

[6] When the Court quotes directly from the insurance policy in this Order, it omits all emphasis contained therein without further note.

### 1.    Breach of Contract Claim

To succeed on their breach of contract claim, Plaintiffs must demonstrate "(1) the existence of a contract; (2) performance by the plaintiff[s] or some justification for nonperformance; (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff[s]." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1197 (D. Colo. 2018).

State Farm argues that Plaintiffs cannot succeed on their contract claim because they cannot demonstrate any breach of the policy based on State Farm's repair estimate of approximately $13,000. [Doc. 64 at 6]. It focuses on the policy provision stating that State Farm's repair estimate "may include new, recycled, and reconditioned parts," including "non-original equipment manufacturer parts." [*Id.* at 7 (emphasis omitted)]; *see also* [Doc. 64-2 at 26]. State Farm contends that, based on this language, the OEM parts used in the Nylund's repairs are "not compensable under the Policy." [Doc. 64 at 7]. In their Response, Plaintiffs direct the Court to other language in the policy—specifically, the guarantee that State Farm's repair estimate "will include parts sufficient to restore the covered vehicle to its pre-loss condition." [Doc. 66 at 8; Doc. 64-2 at 26]. In their view, State Farm failed to provide a repair estimate "that would restore the Vehicle to pre-loss condition." [Doc. 66 at 8]. In its Reply, State Farm "agrees that [the] insurance contract requires it to pay to restore the vehicle to its pre-loss condition," but asserts that, under Colorado law, insurers are only "required to restore the vehicle to pre-loss condition 'in accordance with applicable policy provisions.'" [Doc. 74 at 5 (quoting Colo. Rev. Stat. § 10-4-120(3)(b))]. It then reiterates the policy language permitting the use of non-OEM

22

parts, but it presents no further argument explaining why the statute overrides the policy language. *See* [*id.*].

Defendant's unexplained reliance on § 10-4-120(3)(b) does not change the policy language or the facts of this case. The policy plainly states that State Farm's repair estimate "will include parts sufficient to restore the covered vehicle to its pre-loss condition." [Doc. 64-2 at 26]. The fact that the policy *permits* State Farm to include non-OEM parts in its repair estimate "does not mean that non-OEM parts will in all instances be sufficient to satisfy [its] contractual obligations." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 118 (2d Cir. 2017). Restoring the vehicle to its pre-loss condition "may or may not be possible using non-OEM parts for a particular repair," and the policy provision permitting the use of non-OEM parts does not allow State Farm to "limit its payments to the cost of non-OEM parts regardless of whether the use of such parts will, in the particular circumstance, repair the damaged property to its pre-loss condition." *Id.*

The Parties do not argue that this Court must interpret the meaning of "pre-loss condition" as a matter of law, *see* [Doc. 64; Doc. 66], and courts in other contexts have suggested that whether or not property was restored to pre-loss condition is a question of fact for the jury, *see, e.g.*, *Smith v. Am. Fam. Mut. Ins. Co.*, 289 S.W.3d 675, 683 (Mo. Ct. App. 2009); *Nick's Garage*, 875 F.3d at 119–20. Therefore, limiting its analysis to the argument presented by Defendant, the Court finds that Defendant has not shown it is entitled to judgment as a matter of law based on the policy's language.

Defendant also asserts that some of the non-repair costs that Plaintiffs claim are owed by Defendant, such as "the loan taken against Plaintiff Makara's 401k account," are

"not compensable under the Policy." [Doc. 64 at 8]. It asserts that "[t]here is . . . no coverage under the Policy for the loan or its fees/expenses that Plaintiffs seek as damages in this lawsuit." [*Id.* at 9].[7] Plaintiffs counter by asserting that the loan was necessary to pay for the vehicle's repairs, and if State Farm had compensated them for the entirety of the repairs performed by Nylund's, they would not have needed the loan. [Doc. 66 at 10–11]. While Plaintiffs criticize Defendant for "not citing any part of the Policy" that excludes the loan payment and associated fees from coverage, [*id.* at 10], Plaintiffs themselves fail to cite any policy provision that requires State Farm to compensate Plaintiffs for their private loan and related fees, *see* [*id.* at 10–11].

In insurance cases, "[t]he insured bears the initial burden of demonstrating coverage under the policy." *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1260 (10th Cir. 2020) (citing *Rodriguez ex rel. Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991)). If the insured meets this burden, then it becomes the insurer's burden to "prove the applicability of an exclusion from coverage; if the insurer makes this showing, the burden shifts back to the insured to show an exception to any coverage exclusion." *Id.*

Contrary to Plaintiffs' suggestion, State Farm need not point to policy language to prove a negative—i.e., that the policy does not provide coverage for the loan payment. Rather, it is Plaintiffs' burden to point to policy language affording coverage under the policy. *See id.* Plaintiffs do not do so here, and thus, the Motion for Summary Judgment is **GRANTED** to the *limited* extent Plaintiffs argue that State Farm *breached the insurance*

---

[7] Because Defendant's argument is limited specifically to the loan and related "fees/expenses," *see* [Doc. 64 at 8–9], the Court's analysis is similarly limited.

24

*policy* by not reimbursing Plaintiffs for the loan payment and associated fees or interest. However, this ruling should not be construed as a suggestion that Plaintiffs are unable to recover those amounts as consequential damages related to the alleged breach of contract, should Plaintiffs prove a breach and resulting damages at trial.[8] *Cf. DSCO, Inc. v. Warren*, 829 P.2d 438, 442 (Colo. App. 1991) ("In a breach of contract action, the measure of damages is the benefit of the bargain, . . . including consequential losses which are the natural, probable, and reasonably foreseeable consequence of a party's failure to perform his contract." (quotation omitted)).

### 2.    Bad Faith Claims

Under Colorado law, there are two types of insurance-based bad faith claims available to an insured party:  (1) common law bad faith and (2) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (or "statutory bad faith").  *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021).  To succeed on a statutory claim of unreasonable delay or denial, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis.  *Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

The requirements for success on a common law claim are similar, but "heightened."  *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020).  In addition to demonstrating that the

---

[8] To be clear, the Court does not pass on whether the amounts associated with the loan would properly be considered consequential damages.  The Court makes this statement only to avoid disagreements about the scope of this Court's summary judgment ruling.

insurer delayed or denied the payment of benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim." *Id.* (quoting *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018)).

Thus, to succeed on either type of bad faith claim, Plaintiffs must show that State Farm acted unreasonably. "The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'" *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004)). So long as the insurer had a reasonable basis for its action, it did not act unreasonably. *See Wagner v. Am. Fam. Mut. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014) ("We find nothing unreasonable about American Family's denial of her claim because it had a reasonable basis for its action."); *Ayala v. State Farm Mut. Auto. Ins. Co.*, 628 F. Supp. 3d 1075, 1082 (D. Colo. 2022) ("An insurer's denial of a claim does not constitute statutory bad faith if the insurer has a reasonable basis for the denial."). The insurer's decision to deny benefits is evaluated "based on the information before the insurer at the time of that decision." *Schultz*, 429 P.3d at 847.

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). But "in appropriate circumstances," such as "when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.*

Defendant argues that it is entitled to summary judgment on both of Plaintiffs' bad faith claims because "there is no record evidence that State Farm acted without a

26

reasonable basis or otherwise contrary to industry standards." [Doc. 64 at 13]; *see also* [*id.* at 14]. First, with respect to the statutory claim, Defendant asserts that this case involves a simple valuation dispute, which it says "is not a sufficient basis upon which to maintain a statutory unreasonable denial claim." [*Id.* at 10]; *see also* [*id.* at 9–13]. Plaintiffs respond that this case is not a "mere valuation dispute"; in their view, State Farm acted unreasonably "by refusing to pay for necessary repairs to restore the Vehicle to pre-loss condition." [Doc. 66 at 13 (emphasis omitted)].

To be sure, "[u]nreasonable conduct cannot be established by virtue of a mere disagreement of value between the insured and insurer." *Yale Condos. Homeowner's Ass'n v. Am. Fam. Mut. Ins. Co.*, No. 19-cv-02477-KMT, 2021 WL 1222518, at *7 (D. Colo. Apr. 1, 2021). Under Colorado law, an insurer may permissibly challenge claims that are "fairly debatable." *Vaccaro*, 275 P.3d at 759 (quotation omitted). But "an insurer cannot rely on the mere fact that the claim was fairly debatable in order to prove that it acted reasonably as a matter of law," *Wheatridge Off.*, 578 F. Supp. 3d at 1206, or "avoid liability for unjustified denials of benefits simply by framing each denial as a valuation dispute," *Vaccaro*, 275 P.3d at 760. After all, "every lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy," and if insurers could escape liability by framing the issue as a valuation dispute, then they could always "refuse to pay any claim where money is at issue." *Id.*

Although the Court has excluded a large number of Mr. Castillo's opinions, some still remain, including Mr. Castillo's opinion that State Farm denied payments for repairs that were necessary to restore Plaintiffs' vehicle to its pre-loss condition as required by the policy. *See* [Doc. 63-1 at 4, 6]. Plaintiffs have thus cited evidence from which a

27

reasonable jury could conclude that State Farm lacked a reasonable basis for the denial, and the reasonableness of State Farm's decision cannot be decided as a matter of law. *Cf. Aurzadniczek v. Humana Health Plan, Inc.*, No. 15-cv-00146-RM-KMT, 2016 WL 1266972, at *12 (D. Colo. Apr. 1, 2016) (finding that a reasonable jury could conclude that insurer's interpretation of the policy was not reasonable, such that insurer lacked a reasonable basis to deny claim); *Calfox, Inc. v. Certain Underwriters at Lloyd's, London*, No. 20-cv-02443-RM-KMT, 2024 WL 1051948, at *7 (D. Colo. Mar. 11, 2024) (same). The Motion for Summary Judgment is **DENIED** with respect to Plaintiffs' statutory claim.[9]

As for the common law claim, State Farm argues that there is no evidence that State Farm acted unreasonably because (1) Mr. Castillo "engages in virtually no discussion as to what the industry standards are and how they apply to the present facts," so there is no evidence of insurance industry standards and no evidence that State Farm's conduct violated industry standards, [Doc. 64 at 15]; (2) the evidence shows that State Farm acted reasonably, [*id.* at 15–18]; and (3) there is no evidence that State Farm knew that its conduct was unreasonable or acted with reckless disregard of its unreasonableness, [*id.* at 18–19]. The Court is respectfully unpersuaded by Defendant's arguments and concludes that it has not shown entitlement to summary judgment as a matter of law.

First, the Court has not excluded Mr. Castillo's testimony in its entirety, and a number of his opinions regarding industry standards remain, either because the Court was unpersuaded by Defendant's arguments or because they went unchallenged by

---

[9] State Farm also lists a number of reasons why it believes its conduct or claim decision was reasonable. *See* [Doc. 64 at 11–12]. However, this list simply identifies factual disputes about Defendant's reasonableness that cannot be resolved by this Court.

28

Defendant.  For example, Mr. Castillo opines that State Farm's steering letter violated industry standards; thus, at the very least, genuine issues of fact exist as to the reasonableness of this aspect of State Farm's claims-handling conduct.  Second, State Farm's arguments defending the reasonableness of its conduct do not warrant judgment in its favor;  rather, they simply highlight factual disputes that this Court cannot resolve. And third, the Court disagrees with State Farm that there is no evidence that State Farm acted with knowledge or reckless disregard of its allegedly unreasonable conduct. Specifically, Mr. Castillo has opined that State Farm's letter violated insurance industry standards, and as Plaintiffs point out, [Doc. 66 at 19], this standard is codified by Colorado statute, which prohibits insurers from "[r]epresent[ing] to a beneficiary or claimant who is making a claim under a policy that the use of, or the failure to use, a particular repair business may result in the nonpayment or delayed payment of a claim," Colo. Rev. Stat. § 10-4-120(2)(b).  Since Colorado law prohibits State Farm's alleged conduct, a reasonable jury could conclude that State Farm knew or recklessly disregarded the unreasonableness of its conduct.  *See Jones v. Am. Fam. Mut. Ins.*, No. 15-cv-00631-WYD-MEH, 2017 WL 4350362, at *5 (D. Colo. Feb. 22, 2017) (relying on Unfair Claims Settlement Practices Act, which sets forth industry standards that insurer "arguably knew or should have known of," to deny summary judgment on this element).

Defendant has not demonstrated that it is entitled to summary judgment on either bad faith claim.  The Motion for Summary Judgment is **DENIED** as to those claims.

29

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)    Defendant's Fed. R. Evid. 702 Motion to Limit the Opinions of Plaintiffs' Expert Aaron Castillo [Doc. 63] is **GRANTED in part** and **DENIED in part**;

(2)    Defendant's Motion for Summary Judgment [Doc. 64] is **GRANTED in part** and **DENIED in part**; and

(3)    A Telephonic Status Conference is **SET** for **April 14, 2026 at 2:00 P.M.** to set the Final Pretrial/Trial Preparation Conference and trial in this case. Counsel for the Parties shall participate using the following dial-in information:  **571-353-2301; Access Code: 783456374**.

DATED:  March 31, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

30